Joseph Martin **GAINES**, Petitioner–
Appellant,

v.

Walter R. **KELLY**, Respondent–
Appellee.

Docket No. 96–2761.

United States Court of Appeals,
Second Circuit.

Argued May 21, 1999.

Decided Feb. 1, 2000.

Gail Jacobs, Great Neck, New York, for
Petitioner–Appellant.

**600**

Before: CARDAMONE, JACOBS, Circuit Judges, and CARMAN*, Judge

CARDAMONE, Circuit Judge:

Joseph Martin Gaines (petitioner or appellant) appeals the judgment entered on August 30, 1996 in the United States District Court for the Western District of New York, before Judge Richard J. Arcara, denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1994). Petitioner sought his release from state custody contending that the state trial court's instructions defining the term "proof beyond a reasonable doubt," which it gave to the jury that convicted him, denied him due process.

The appeal focuses on those instructions that purported to define the meaning of beyond a reasonable doubt seven different ways. It is our policy in general to discourage a trial court from an attempt to define beyond a reasonable doubt because such attempts to clarify the term more often than not promote confusion rather than clarity, and thereby lead a jury to misapply the standard of proof. This happened in the present case where, reading the charge as a whole, we are persuaded that there is a reasonable likelihood that the seven different definitions caused the jury to apply the reasonable doubt standard in an unconstitutional manner.

Gaines points to a number of phrases in the reasonable doubt charge that, he asserts, impermissibly lowered the prosecution's burden of proof or shifted the burden of proof to the defense. The cumulative effect of the repeated irregularities in the reasonable doubt charge creates a strong likelihood that the jury understood the instructions to allow defendant's conviction based on proof insufficient to meet constitutional standards, regardless of whether the challenged phrases, viewed in isolation from each other, are sufficiently defective to merit reversal of Gaines' conviction. The defective jury instructions impaired the fundamental fairness of the criminal proceeding that led to Gaines' conviction warranting habeas corpus relief.

We have already granted such relief when we reversed the judgment of the district court on June 4, 1999 on the grounds that the reasonable doubt instruction was constitutionally defective; we further ordered that petitioner be granted either a new trial or his release. Our reasons for granting such relief are set out in the opinion that follows.

## BACKGROUND

In the early morning hours of February 1, 1982 Gaines broke into the Apex Grocery Store in Niagara Falls, New York, took some coffee and batteries off the store shelves, and set the store on fire. Upon arriving at the scene, firefighters immediately began searching for occupants in the apartment located above the burning grocery store. One firefighter became entrapped inside the burning building and died as a result.

A month later, on March 12, 1982 petitioner was indicted by a grand jury in Niagara County Court on five counts for his alleged role in the arson, and a jury trial was held on four charges (one having been dismissed) in the Niagara County Court (Charles J. Hannigan, J.). Gaines was found guilty on September 27, 1982 on the four counts of murder in the second degree, arson in the third degree, burglary in the third degree, and petit larceny, and sentenced on October 27, 1982 to a term of

---

* Hon. Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

imprisonment of 20 years to life with three lesser terms running concurrently.

Petitioner promptly appealed this conviction to the New York State Supreme Court, Appellate Division. In 1983 the Niagara County Public Defender's Office was assigned to perfect the appeal. But it failed to file a brief on his behalf until five years later, on March 9, 1988. Gaines filed a *pro se* supplemental brief in the Appellate Division arguing that the trial court's instructions defining reasonable doubt were constitutionally infirm. The Appellate Division affirmed the judgment of conviction, see *People v. Gaines*, 143 A.D.2d 520, 521, 532 N.Y.S.2d 944 (4th Dep't 1988), and the Court of Appeals denied leave to appeal on December 5, 1988. *See People v. Gaines*, 73 N.Y.2d 855, 537 N.Y.S.2d 501, 534 N.E.2d 339 (1988).

On December 28, 1987 while awaiting the perfection of his appeal to the Appellate Division, Gaines filed a petition for a writ of habeas corpus in the United States District Court for the Western District of New York, claiming ineffective assistance of appellate counsel and denial of his right to appeal arising from the five year delay. The district court referred the matter to a magistrate judge who recommended finding that the delay in Gaines' appeal had violated the Constitution, but that the appropriate relief was an action under 42 U.S.C. § 1983, not a habeas petition. The district court adopted the magistrate judge's report and recommendation but Gaines never filed a § 1983 action.

In 1993 petitioner filed a second habeas petition in the same district court under 28 U.S.C. § 2254, asserting this time that the state trial court's instructions defining reasonable doubt had deprived him of his due process right to a fair trial. On December 9, 1994 Judge Arcara referred the case to a different magistrate judge who recommended denying Gaines' petition and issuing a certificate of appealability. Again, the district court adopted the magistrate judge's report and recommendation, but it declined to issue a certificate of appealability. Judgment was thereupon entered denying Gaines' habeas petition.

In September 1996 petitioner filed a notice of appeal to this Court, but the appeal was dismissed for failure to comply with the Civil Appeals Management Plan. Nearly two years later, on August 6, 1998 we granted Gaines' subsequent *pro se* motion for a certificate of appealability, but only "as to the claim that appellant was denied due process by the trial court's reasonable doubt jury charge." Gaines' counsel was also directed "to address the issue of whether appellant's due process claim is based on a new rule of law, see, e.g., *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and if it falls within an exception recognized in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)." This appeal followed.

## DISCUSSION

### I Standard of Review

On appeal the grant or denial of a petition for a writ of habeas corpus is reviewed *de novo*. See *English v. Artuz*, 164 F.3d 105, 108 (2d Cir.1998). To obtain habeas relief petitioner must demonstrate by a preponderance of the evidence that his federal constitutional rights were violated. *See id.*

### II Retroactivity

As a general rule, "we will not disturb a final state conviction or sentence unless it can be said that a state court, at the time the conviction or sentence became final, would have acted objectively unreasonably by not extending the relief later sought in federal court." *O'Dell v. Netherland*, 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). Accordingly, a threshold question on any habeas appeal is whether the relief petitioner seeks would entail the retroactive application of a new rule of federal constitutional criminal procedure to invalidate a final state conviction. *See Teague v. Lane*, 489 U.S. 288, 300–01,

310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion); *see also Penry v. Lynaugh,* 492 U.S. 302, 313–14, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (adopting the *Teague* holding by majority opinion).

Answering this question requires a step-by-step inquiry into three matters: first, the date on which petitioner's conviction became final; second, whether the rule of constitutional criminal procedure on which petitioner relies is "new"; and third, if the rule is new, whether it falls within one of the two narrow exceptions to the general rule against the retroactive application of new rules to invalidate final state court convictions. *See O'Dell,* 521 U.S. at 156–57, 117 S.Ct. 1969. We address these steps in turn.

### A. *When Did Gaines' Conviction Become Final?*

■ With regard to the first step, we have no trouble in determining that Gaines' conviction became final on December 5, 1988 when the New York Court of Appeals, the state's highest court, denied Gaines leave to appeal, *see Gaines,* 73 N.Y.2d 855, 537 N.Y.S.2d 501, 534 N.E.2d 339. *Cf. O'Dell,* 521 U.S. at 157, 117 S.Ct. 1969 (conviction became final upon denial of certiorari to state's highest court).

### B. *Is the Rule on Which Gaines Relies "New"?*

■ Under the second step, in ascertaining whether a rule is new, "our task is to determine whether a state court considering [petitioner's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *accord O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969.

■ Here, the inquiry grows more complicated. Certainly, in December 1988 it was not a "new" notion that the standard of proof beyond a reasonable doubt in criminal cases implicates concerns of constitutional due process. The Supreme Court after all has entertained challenges to reasonable doubt instructions for over a century. *See, e.g., Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481 (1880). And in 1970 the Supreme Court explicitly held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

Under the *Winship* standard, later Courts struck down jury instructions that lowered or shifted this heavy burden of proof. *See, e.g., Cool v. United States,* 409 U.S. 100, 104, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (per curiam) (instruction, telling jury to disregard defense testimony unless it believed beyond reasonable doubt that the testimony was true, had "the effect of substantially reducing the Government's burden of proof"). But it was not until 1990—after Gaines' conviction had become final—that, in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), the Supreme Court first held that a state trial court's definition of reasonable doubt violated constitutional due process. *See Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) ("In only one case have we held that a definition of reasonable doubt violated the Due Process Clause." (citing *Cage*)).

Within this Circuit challenges to reasonable doubt instructions date at least as far back as 1912. *See United States v. Davis,* 328 F.2d 864, 867–68 (2d Cir.1964) (collecting cases). In 1965 we reversed a conviction by reason of an improper articulation of the reasonable doubt standard that permitted the jury to convict merely upon being "morally convinced of [the] defendant's guilt." *United States v. Johnson,* 343 F.2d 5, 6 (2d Cir.1965). But *Johnson* involved direct review of a federal convic-

tion, not collateral habeas review of a state conviction, and as such the decision may have been no more than a routine exercise of the supervisory power that this Court has over federal district courts, but which does not extend to collateral review of state convictions. *See Victor*, 511 U.S. at 17, 114 S.Ct. 1239 ("[W]e have no supervisory power over the state courts.").

Of those cases prior to *Cage* that involved collateral habeas review of state convictions, some did reverse the challenged convictions because of defects in the state trial court's instructions, as evaluated under the *Winship* standard. *See, e.g., Ramirez v. Jones*, 683 F.2d 712, 715 (2d Cir.1982) (instructions shifted burden of proof to defendant on issue of intent). But petitioner has brought no cases to our attention that reversed state convictions specifically because of a defect in the state trial court's *definition* of the reasonable doubt standard.

■ Accordingly, we think it would be problematic to conclude that a state court considering Gaines' claim in December 1988 "would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Saffle*, 494 U.S. at 488, 110 S.Ct. 1257. In other words, the rule of constitutional criminal procedure on which Gaines relies, emanating as it does from *Cage* and later cases, is a "new" rule within the framework of *Teague v. Lane*, 489 U.S.

288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In so holding, we join the majority of other circuits that have considered this question. *See Humphrey v. Cain*, 138 F.3d 552, 553 (5th Cir.) (en banc) (approving the reasoning of the earlier panel opinion at 120 F.3d 526), *cert. denied*, —— U.S. ——, 119 S.Ct. 348, 365, 142 L.Ed.2d 287 (1998); *Adams v. Aiken*, 41 F.3d 175, 178 (4th Cir.1994); *Nutter v. White*, 39 F.3d 1154, 1157 (11th Cir.1994); *Murray v. Delo*, 34 F.3d 1367, 1382 (8th Cir.1994); *cf. Rodriguez v. Superintendent, Bay State Correctional Ctr.*, 139 F.3d 270, 273–74 (1st Cir.1998) (holding *Cage* constitutes "new" rule of law for purposes of allowing successive habeas petitions), *abrogated on other grounds by Bousley v. United States*, 523 U.S. 614, 622–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *In re Hill*, 113 F.3d 181, 183–84 (11th Cir.1997) (implying the same as *Rodriguez* but finding claim was "previously available" with respect to prior habeas petition); *Nevius v. Sumner*, 105 F.3d 453, 462 (9th Cir.1996) (finding petitioner had made *prima facie* case for same proposition as in *Rodriguez*), *cert. denied sub nom. Nevius v. McDaniel*, —— U.S. ——, 119 S.Ct. 2344, 144 L.Ed.2d 241 (1999).[1]

### C. Does the Rule on Which Gaines Relies Fall Within an Exception to the *Teague* Doctrine?

■ Under the third and final step, we must ascertain whether the rule Gaines

---

1. In *Murray*, the Eighth Circuit went even further by holding that because the instruction challenged in that case was distinct from the specific language rejected by *Cage*, the application of *Cage* to the challenged language would have created a new rule under *Teague*. *See* 34 F.3d at 1382 (explaining that the "firmly convinced" language in the challenged charge was not specifically considered in *Cage*). Prior panels of this Circuit, however, have reviewed definitions of the reasonable doubt standard on collateral habeas review without first pausing to consider whether the specific language at hand had been addressed in *Cage*. *See Beverly v. Walker*, 118 F.3d 900 (2d Cir.), *cert. denied*, 522 U.S. 883, 118 S.Ct. 211, 139 L.Ed.2d 147 (1997); *Vargas v. Keane*, 86 F.3d 1273 (2d Cir.), *cert. denied*, 519 U.S. 895, 117 S.Ct.

240, 136 L.Ed.2d 169 (1996); *Chalmers v. Mitchell*, 73 F.3d 1262 (2d Cir.), *cert. denied*, 519 U.S. 834, 117 S.Ct. 106, 136 L.Ed.2d 60 (1996); *Perez v. Irwin*, 963 F.2d 499 (2d Cir. 1992). Moreover, our case law makes clear that the mere application of past precedent, absent the imposition of new conditions, does not thereby create new rules for purposes of the *Teague* analysis. *See English*, 164 F.3d at 108 (finding that application of *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), to new facts did not create new rules). Because the Eighth Circuit's approach runs contrary to this Court's practice, and because we think *Cage* and its progeny dictate the result Gaines seeks in this case, we decline to adopt *Murray*'s holding in this respect.

asserts falls within one of the two narrow exceptions to the *Teague* doctrine, which generally prohibits the retroactive application of new rules of constitutional criminal procedure to invalidate final state convictions. *See O'Dell,* 521 U.S. at 156–57, 117 S.Ct. 1969. The first of these exceptions, not implicated by the present appeal, "applies to new rules that place an entire category of primary conduct beyond the reach of the criminal law, or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense." *Sawyer v. Smith,* 497 U.S. 227, 241, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (citing *Teague,* 489 U.S. at 311, 109 S.Ct. 1060, and *Penry,* 492 U.S. at 330, 109 S.Ct. 2934).

The second exception, on which Gaines explicitly relies, "applies to new 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." *Id.* at 241–42, 110 S.Ct. 2822 (quoting *Saffle,* 494 U.S. at 495, 110 S.Ct. 1257). The *Sawyer* Court clarified that a "rule that qualifies under this [second] exception must not only improve accuracy, but also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Id.* at 242, 110 S.Ct. 2822 (quoting *Teague,* 489 U.S. at 311, 109 S.Ct. 1060).

As to accuracy, it seems fairly clear that the new rule articulated by *Cage* and its progeny is necessary to sustain the accuracy of criminal convictions, insofar as that line of cases strictly insists upon a standard of proof beyond a reasonable doubt. The close link between the reasonable doubt standard and the accuracy of the jury's verdict was highlighted by the Supreme Court's decision in *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). There it was held that a constitutional defect in a jury instruction defining reasonable doubt can never constitute harmless error, but rather requires automatic reversal of a conviction. The *Sullivan* Court explained that harmless error analysis is not possible in such a case, since "the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings," leaving the reviewing court only to speculate on its own as to "what a reasonable jury would have done." *Id.* at 281, 113 S.Ct. 2078 (emphasis in original); *see also Winship,* 397 U.S. at 363, 90 S.Ct. 1068 (The reasonable doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error."). Because an improper definition of the reasonable doubt standard "vitiates *all* the jury's findings," it logically follows that the reasonable doubt rule flowing from *Cage* plays a pivotal role in ensuring the accuracy of the findings that underlie any criminal conviction rendered by a jury.

The more difficult question is whether the rule asserted by Gaines is a "watershed rule[ ] of criminal procedure" that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer,* 497 U.S. at 241–42, 110 S.Ct. 2822 (emphasis omitted). Here, the Supreme Court has provided relatively sparse guidance as to precisely what rules meet this description. But the Court has, on occasion, cited *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as an example of the sort of rule falling within the second *Teague* exception. *See Saffle,* 494 U.S. at 495, 110 S.Ct. 1257; *see also O'Dell,* 521 U.S. at 167, 117 S.Ct. 1969. *Gideon* established an affirmative right to counsel in felony cases. The right to accuracy in instructions defining reasonable doubt resembles the right to counsel in that both rights are fundamental to the fairness of a criminal proceeding. As the Court explained in *Sullivan,* "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt," 508 U.S. at 278, 113 S.Ct. 2078, meaning that where a jury instruction defining reasonable doubt is constitutionally deficient, "there [is] no jury verdict within the meaning of the Sixth Amendment," *id.* at 280, 113 S.Ct. 2078.

Because any criminal conviction rendered pursuant to an unconstitutional definition of reasonable doubt is necessarily unfair, *see Teague*, 489 U.S. at 315, 109 S.Ct. 1060, we conclude that the rule advanced by Gaines falls within the second exception to the *Teague* doctrine. In so holding, we again side with the majority of circuits to have pondered the question. *See Humphrey*, 138 F.3d at 553 (5th Cir.); *Nutter*, 39 F.3d at 1158 (11th Cir.); *Adams*, 41 F.3d at 179 (4th Cir.); cf. *Nevius*, 105 F.3d at 462 (9th Cir.) (finding petitioner had made *prima facie* case for retroactive application of *Cage*); *Harmon v. Marshall*, 69 F.3d 963, 967 (9th Cir. 1995) (per curiam) (finding *Sullivan* falls within second *Teague* exception). *But cf. Rodriguez*, 139 F.3d at 276 (1st Cir.) (declining to authorize successive habeas petition because Supreme Court itself has not yet decided whether *Cage* applies retroactively); *In re Hill*, 113 F.3d 181 (11th Cir.) (finding *Cage* generally applies retroactively under *Nutter*, but declining to authorize successive habeas petition on same rationale as *Rodriguez* ); *Murray*, 34 F.3d at 1382 (8th Cir.) (omitting any consideration of the *Teague* exceptions). Accordingly, we proceed to the merits of Gaines' habeas petition.

### III Reasonable Doubt Jury Instruction

#### A. *In General*

 The Constitution requires that a trial court in a criminal proceeding "instruct[ ] the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt," but it does not "require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor*, 511 U.S. at 5, 114 S.Ct. 1239. Thus, a trial court may choose freely either to define reasonable doubt or to refrain from defining it. But if the trial court chooses to define it, then the instructions, "'taken as a whole, ... [must] correctly convey[y] the concept of reasonable doubt to the jury.'" *Id.* (quoting *Holland*, 348 U.S. at 140, 75 S.Ct. 127);

*accord United States v. Desimone*, 119 F.3d 217, 226–27 (2d Cir.1997), *reh'g denied*, 140 F.3d 457 (2d Cir.), *and cert. denied sub nom. Fernandez v. United States*, —— U.S. ——, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998). The Supreme Court has underscored the importance of the reasonable doubt standard in strong language—

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law.... [A] person accused of a crime ... would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case.

*Winship*, 397 U.S. at 363, 90 S.Ct. 1068.

*Winship* also stressed the reasons why the reasonable doubt standard is such a critical element in the prosecution of a criminal proceeding. Foremost, of course, is the stake an accused has in maintaining his freedom from incarceration. Of equal importance, the standard satisfies society that the criminal law will be fairly applied, so that individual citizens may conduct their affairs without fear of an unjust criminal conviction. *See id.* at 364, 90 S.Ct. 1068.

 With these reasons in mind, we review reasonable doubt instructions for constitutional error asking whether "there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor*, 511 U.S. at 6, 114 S.Ct. 1239 (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)); *accord Desi-*

*mone,* 119 F.3d at 227. In making this assessment, the challenged instructions must be viewed in context, not only with respect to the overall charge, but also with respect to the entire trial record. *See Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *Desimone,* 119 F.3d at 227; *United States v. Reese,* 33 F.3d 166, 172 (2d Cir.1994); *Perez,* 963 F.2d at 503; *see also Victor,* 511 U.S. at 16, 114 S.Ct. 1239 ("But the [challenged] language cannot be sequestered from its surroundings."). In particular, using the now accepted formulation of this assessment taken from *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), we must determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the constitution. *Estelle,* 502 U.S. 72 & n. 4, 112 S.Ct. 475.

Examination of the trial court's reasonable doubt instruction reveals serious constitutional deficiencies. While each of the several individual definitions of reasonable doubt given at Gaines' trial may withstand constitutional scrutiny in isolation, our analysis focuses on the cumulative effect of the definitions. Examining the definitions as a composite set, as the jury itself heard them, is crucial to determining the fairness of the proceeding, and informs our constitutional inquiry under *Sawyer v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

### B. *Charge Given at Gaines' Trial*

▇ The reasonable doubt instruction given to the jury at petitioner's state court trial is reproduced at the end of this opinion in an Appendix. Only brief reference in the discussion that follows will be made therefore to some of the seven different definitions of reasonable doubt that the trial court gave the jury. At the outset, it is important to note that the appellate court in New York State reviewing these instructions reversed no fewer than 21 convictions because of these instructions that were given by the same trial judge, with frequent citation to the Supreme Court's decisions in *Cage,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339, and *Sullivan,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182. The citations to these reversals are set out in the margin.[2] The state appellate court reversals were based primarily on

---

**2.** *See People v. Young,* 236 A.D.2d 800, 653 N.Y.S.2d 471 (4th Dep't), *appeal denied,* 89 N.Y.2d 1017, 658 N.Y.S.2d 255, 680 N.E.2d 629 (1997); *People v. Moore,* 231 A.D.2d 918, 647 N.Y.S.2d 894 (4th Dep't), *appeal denied,* 89 N.Y.2d 866, 653 N.Y.S.2d 289, 675 N.E.2d 1242 (1996); *People v. James Moore,* 210 A.D.2d 950, 621 N.Y.S.2d 1020 (4th Dep't 1994); *People v. Guiteau,* 204 A.D.2d 1035, 614 N.Y.S.2d 960 (4th Dep't), *appeal denied,* 84 N.Y.2d 868, 618 N.Y.S.2d 13, 642 N.E.2d 332 (1994); *People v. Myrick,* 203 A.D.2d 902, 902, 611 N.Y.S.2d 722 (4th Dep't 1994) (citing *Sullivan* ); *People v. Bradley,* 201 A.D.2d 914, 610 N.Y.S.2d 901 (4th Dep't 1994); *People v. Dargen,* 201 A.D.2d 882, 607 N.Y.S.2d 795 (4th Dep't 1994); *People v. Walker,* 198 A.D.2d 785, 786, 605 N.Y.S.2d 726 (4th Dep't 1993) (citing *Sullivan* ); *People v. Grant,* 197 A.D.2d 910, 602 N.Y.S.2d 585 (4th Dep't), *appeal denied,* 82 N.Y.2d 895, 610 N.Y.S.2d 162, 632 N.E.2d 472 (1993); *People v. Sosby,* 197 A.D.2d 909, 910, 602 N.Y.S.2d 455 (4th Dep't 1993) (citing *Cage* and *Sullivan*); *People v. Biro,* 197 A.D.2d 866, 866, 602 N.Y.S.2d 474 (4th Dep't 1993) (citing *Sullivan*); *People*

*v. Brinson,* 195 A.D.2d 966, 601 N.Y.S.2d 890 (4th Dep't 1993); *People v. LaPlanche,* 193 A.D.2d 1062, 598 N.Y.S.2d 877 (4th Dep't), *appeal denied,* 82 N.Y.2d 756, 603 N.Y.S.2d 998, 624 N.E.2d 184 (1993); *People v. Sneed,* 193 A.D.2d 1139, 598 N.Y.S.2d 624 (4th Dep't), *appeal denied,* 82 N.Y.2d 759, 603 N.Y.S.2d 1001, 624 N.E.2d 187 (1993); *People v. King,* 193 A.D.2d 1118, 598 N.Y.S.2d 1015 (4th Dep't), *appeal denied,* 82 N.Y.2d 721, 602 N.Y.S.2d 818, 622 N.E.2d 319 (1993); *People v. Timothy Freeman,* 193 A.D.2d 1118, 598 N.Y.S.2d 1015 (4th Dep't), *appeal denied,* 82 N.Y.2d 718, 622 N.E.2d 316, 602 N.Y.S.2d 815 (1993); *People v. Theodore Freeman,* 193 A.D.2d 1117, 598 N.Y.S.2d 1014 (4th Dep't), *appeal denied,* 82 N.Y.2d 718, 602 N.Y.S.2d 815, 622 N.E.2d 316 (1993); *People v. Banks,* 193 A.D.2d 1051, 598 N.Y.S.2d 1014 (4th Dep't 1993); *People v. Payne,* 192 A.D.2d 1117, 596 N.Y.S.2d 282 (4th Dep't 1993); *People v. Frank,* 186 A.D.2d 977, 978, 588 N.Y.S.2d 670 (4th Dep't 1992) (citing *Cage*); *People v. Newell,* 178 A.D.2d 959, 579 N.Y.S.2d 257 (4th Dep't 1991).

the trial court's definition of reasonable doubt as "morally and reasonably certain." Specifically, the trial judge said to the jury

> But, it is possible to establish the guilt or [sic] a Defendant charged with a crime to a reasonable degree of certainty. To that degree of proof, the People must be held and are held under the law and if they fail to sustain that burden, the Defendant is entitled to the benefit of a reasonable doubt and to acquittal.

The state appellate court believed that such a charge effectively reduced the People's burden of proof necessary to convict and thereby deprived petitioner of a fair trial. Such remarkable consistency and frequency in the state court's decision to reverse based on the same instructions, given by the same judge, we think supports our conclusion that the errors involved in Gaines' trial are not simply technical failings, but errors of a constitutional dimension.

### C. *Analyzing Cumulative Effect of Instructions*

We turn next to the cumulative effect that the instructions produce. This line of inquiry is central to determining constitutionality, since as earlier noted, "jury instructions must be viewed in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable-doubt concept to the jury." *Desimone*, 119 F.3d at 227.

Even were each and every one of the individual definitions of reasonable doubt to pass constitutional muster, their cumulative effect may violate constitutional due process. This much can be seen from a brief comparison of the Supreme Court's decisions in *Victor*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583, and *Cage*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339. In both cases, the Court considered a jury instruction defining a reasonable doubt as a "substantial doubt" and suggesting that the degree of proof required for conviction was proof to a "moral certainty"; and in both cases, the Court also found these

phrases problematic. *See Victor*, 511 U.S. at 7, 16, 18–20, 22, 114 S.Ct. 1239; *Cage*, 498 U.S. at 40–41, 111 S.Ct. 328.

■ In *Victor*, the Court upheld the use of these phrases, reasoning that any ambiguities were cured by contextual language that grounded the concept of "moral certainty" in the evidence before the jury and that contrasted "substantial doubt" both with "conjecture" and with an alternative definition using "hesitate to act" language. 511 U.S. at 16, 19–20, 22, 114 S.Ct. 1239. But in *Cage*, the Court rejected the charge as unconstitutional, relying instead on the close conjunction of these phrases, the added reference to "grave uncertainty," and the absence of any reference to "evidentiary certainty" or to similar contextual explanations. 498 U.S. at 40–41, 111 S.Ct. 328. The implicit import of these decisions, therefore, is that vague language that in and of itself does not warrant reversal, may become grounds for reversal when it is coupled with other problematic (but, in itself, non-fatal) language in a manner that is reasonably likely to confuse the jury.

In *Dunn v. Perrin*, 570 F.2d 21 (1st Cir.1978), the First Circuit made more explicit the notion that cumulative errors may render a reasonable doubt instruction constitutionally deficient. *Dunn* began by pointing to three ambiguities in the trial court's reasonable doubt charge: first, the definition of reasonable doubt as a doubt for which " 'a reasonable person can give . . . a good or sufficient reason' "; second, the definition of reasonable doubt as " 'such a strong and abiding conviction as still remains after careful consideration of all the facts and arguments' "; and third, the statement that there are matters " 'which we have no means of verifying, but as to the truth of which we are morally certain. In such instances, there is no reasonable doubt.' " 570 F.2d at 23–24. The panel went on to explain its reason for reversing the petitioner's conviction, in light of these three anomalies

Here reasonable doubt was improperly defined three times. This is thus not a technical error appearing in artificial isolation ... or one that was cured by an otherwise proper charge. The cumulative effect of the three errors was to obfuscate one of the essentials of due process and fair treatment.

*Id.* at 25; *see also id.* at 23 ("While standing alone, this portion of the charge [i.e., the "give a good reason" language] might not be reversible error, we think it was improper."). Indeed, in recent years, multiple panels of the First Circuit have cited *Dunn* for the proposition that " '[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect,' so as to deny due process." *United States v. Fernandez*, 145 F.3d 59, 66 (1st Cir.1998) (citing *Dunn* and quoting *United States v. Sepulveda*, 15 F.3d 1161, 1195–96 (1st Cir. 1993) (citing *Dunn*)).

In *United States v. Birbal*, 62 F.3d 456 (2d Cir.1995), we adopted a point of view similar to that of the First Circuit with respect to cumulative error in reasonable doubt instructions. There, we considered an instruction that had already been examined by a prior panel of this Circuit, *United States v. Delibac*, 925 F.2d 610 (2d Cir.1991) (per curiam), with the difference that an additional paragraph was challenged in the *Birbal* charge. *See Birbal*, 62 F.3d at 460. In the prior case, the *Delibac* panel had criticized, but ultimately upheld the challenged instructions that contained three ambiguities cited by the appellant: first, the instruction's use of "hesitate to ... act" language; second, its equation of reasonable doubt with " 'substantial doubt' "; and third, its directive that the jury " 'need not find every fact beyond a reasonable doubt.' " *Birbal*, 62 F.3d at 460 (quoting *Delibac*, 925 F.2d at 614). The added paragraph of the *Birbal* instruction went further, however, by appending the statement, " 'Should the prosecution fail to prove the guilt of a defendant beyond a reasonable doubt, you may acquit the defendant on the basis of the presumption of innocence.' " *Id.*

*Birbal* criticized the added statement—noting that the choice of "may acquit" as opposed to "must acquit"—as a verb permitted the jury to convict at its discretion even in the event that the prosecution failed to meet its burden of proof. *See id.* at 460. The panel reasoned on this basis that "[t]he court's charge, which of course remains deficient for the three reasons enumerated in *Delibac*, contains an additional, and more serious, error ... which, *when added to the already catalogued litany of errors* [from *Delibac* ], pushes the charge over the line." *Id.* (emphasis added). Recognizing the cumulative nature of these errors, the *Birbal* panel continued

This erroneous instruction [i.e., the "may acquit" language], coming as it did at the end of the court's instructions on reasonable doubt, was, we think, only partially ameliorated by the court's correct instruction, several sentences earlier, that "You cannot find the defendants guilty unless the government has met [its] burden of proof." *At best, these two conflicting instructions, when added to the deficiencies catalogued in* Delibac, *must have left the jury uncertain of the standard it was charged with applying.* Such a jury, it goes without saying, was insufficiently prepared to carry out its constitutional mandate to resolve all reasonable doubts before adjudging the defendants guilty.

*Id.* (emphasis added); *cf. United States v. Morales*, 577 F.2d 769, 777 (2d Cir.1978) (jury charge misstatements had "cumulative effect" of confusing jury and depriving appellant of fair trial). Accordingly, the *Birbal* panel reversed the appellants' convictions and remanded for retrial. 62 F.3d at 465.

## IV Cumulative Effect of Reasonable Doubt Instructions in the Present Case

As with the *Birbal* charge, various anomalies in the reasonable doubt charge

given at Gaines' trial, when considered in their cumulative totality, "must have left the jury uncertain of the standard it was charged with applying." *Birbal,* 62 F.3d at 460. Examining these anomalies in isolation cannot accurately measure the constitutional sufficiency of the instructions as a whole. Although the Supreme Court has sustained similar definitions on an individual basis, its reasoning has depended entirely on the particular context the instructions create as a composite set. As we consider the definitions in this light, as part of a jury charge riddled with ambiguities, any potential justification for upholding each definition ultimately collapses.

For example, one of the definitions the trial court gave to the jury stated

A juror who has such a reasonable doubt and asserts it, ought to have a reason which he can give to himself and which he should be able to give to his fellow jurors, if they request it.

While it is the duty of each juror to discuss and consider the opinion of the other jurors, he must decide the case on his own honest opinion of the evidence, and upon his own judgment, and he is not required to surrender any conscious conviction he may entertain.

Prior panels of this court have stressed that "instructions tying 'reasonable doubt' to a doubt 'for which you can give a reason' ... may well be unwise, because of the possibility that such an instruction will 'intimidate a juror by suggesting that he may be called upon to explain his doubts.'" *Vargas,* 86 F.3d at 1277 (quoting *United States v. Davis,* 328 F.2d 864, 867 (2d Cir.1964)). In *Vargas* we upheld a reasonable doubt instruction of this variety based on two countervailing considerations. First, we found that the surrounding passages in the instruction directed the jury to ground their decisions in the evidence, such that the "reason" a juror would think herself expected to give would simply be a reason based in the evidence, and not one exceeding degree of doubt required for acquittal. *See id.* at 1278 ("[T]he jury was

unlikely to have understood the challenged language to bear upon the *degree* or *quantum* of doubt necessary for acquittal, but rather, upon the appropriate *basis* for the formulation of a doubt sufficient for acquittal."). Second, we reasoned that the surrounding passages sufficiently emphasized the prosecution's burden of proof, such that the jurors were unlikely to understand the instruction as demanding that they look to each other or to the defendant to supply a reason to acquit. *See id.* at 1278–79.

Here however, the trial court referred a juror to "his own judgment" as an independent basis for deciding the case, implying that bases for decision existed aside from the evidence. The reference to "his own judgment" undermines the countervailing factors on which the outcome in *Vargas* relied. The two ambiguities work in tandem to muddle the proper basis for a juror's doubt, the quantum of proof required, and who bears the burden of proof.

We repeat our earlier observation that "attempts to clarify reasonable doubt tend to create more confusion than does the expression itself." *Desimone,* 119 F.3d at 226. Not only do lengthy reasonable doubt charges run the risk of defining the concept in a manner that is not on point, but the very act of giving several varying definitions of reasonable doubt may itself undermine the strictness of the standard in the jurors' minds. In fact, "several circuits, including this one, generally discourage trial courts from attempting to define the term." *Id.* at 226–27 (collecting cases).

Central to our decision today is the fact that when a reasonable doubt charge gives several definitions of reasonable doubt, the likelihood that the jury will misunderstand any one definition is augmented by the other problematic definitions that give it broader context. *See Victor,* 511 U.S. at 16, 19–20, 22, 114 S.Ct. 1239 (distinguishing *Cage* based on the context of the challenged language). The present charge, for example, contains references to "a moral

certainty," to "reasonably and morally certain," and to "a reasonable degree of certainty." There is in our view a reasonable likelihood that the jurors hearing all three terms given in a single charge concluded that deciding whether to acquit or to convict rested not on the evidence alone but also on abstract moral considerations. Although the charge at Gaines' trial contained directives that the jury base its decision on the evidence, there is no reason to think that the jury understood these directives to preclude independent moral considerations, in light of the repeated phrases suggesting to the contrary. Consequently, we hold that considering the totality of the reasonable doubt charge given the jury at petitioner's trial, there is a reasonable likelihood that the jury applied the instruction given it in an unconstitutional manner.

## CONCLUSION

Accordingly, and for the reasons stated, we reverse the judgment of the district court denying the writ and remand the matter to the district court, as stated earlier, with instructions for it to grant the writ of habeas corpus and either to order a new trial for petitioner or to grant his release.

## APPENDIX

The following are the reasonable doubt instructions given to the jury by the state court at Gaines' trial.

The Defendant in this case is presumed to be innocent. That presumption stays with the Defendant throughout the tiial [sic]. It means that there is not [sic] burden on the Defendant to prove his innocence. By interposing a plea of not guilty, the Defendant denies the charges against him and raises the issues of fact that must be tried in a criminal case, and decided by the Jury. By his plea of not guilty, the Defendant has put into issue every material allegation in this Indictment. By entering that plea, he has now placed upon the People of the State of New York, a burden of proof, that always remains with the People. The prosecution must establish his guilt and prove it beyond a reasonable doubt. If, during the course of the trial, evidence is produced before you, which under the law, as the Court lays it down, satisfies you in the course of your deliberations as to the guilt of the Defendant, then that presumption fails; and upon those circumstances you ought to find the Defendant guilty [sic].

The burden of proof on the People to establish the Defendant's guilt beyond a reasonable doubt never shifts. The Defendant is never obligated to prove his innocence. Before you as a Jury can convict the Defendant, you must be convinced of his guilt beyond a reasonable doubt. This is a settled rule of law in criminal cases, strictly enforced by the Court, to be scrupulously applied by you members of the Jury.

[1] Reasonable doubt is just what the words imply. A reasonable doubt is a doubt based on reason, and arising out of the whole evidence or the lack of evidence in the case; [2] a doubt which leaves your mind in a state of suspense, so that you are not able to say that you are convinced to a moral certainty of the Defendant's guilt. [3] Reasonable doubt, must, therefore, be based entirely and absolutely upon some good, sound, substantial reason, without appeal to prejudice, sympathy or to the imagination. [4] A juror who has such a reasonable doubt and asserts it, ought to have a reason for such a doubt which he can give to himself and which he should be able to give to his fellow jurors, if they request it.

While it is the duty of each juror to discuss and consider the opinion of the other jurors, he must decide the case on his own honest opinion of the evidence, and upon his own judgment, and he is not required to surrender any conscious conviction he may entertain.

 

So, according to the definition of reasonable doubt, which I have just stated, if after reviewing all the evidence in this case, you have such a reasonable doubt as to the guilt of the Defendant, upon any branch of the case as I am presently going to instruct you, it is your duty to acquit the Defendant of any crime.

[5] If, on the other hand, such a reasonable doubt has been dispelled and you are morally and reasonably certain as to the Defendant's guilt, it is just as much your duty to convict the Defendant of the crime [as] you may determine that the evidence establishes.

There are two words in that definition: "reasonable" "doubt". Each one has a value in it or it would not be there. [6] It is not the duty of the People or the prosecution in a criminal case to establish the guilt of the Defendant beyond all possible or imaginary doubt, or to a mathematical certainty. That is not the burden the People have in this case, because that degree of proof cannot be had in human affairs. If the People were held to that degree of proof, it would be useless to try anybody in a criminal court. But, it is possible to establish the guilt or [sic] a Defendant charged with a crime to a reasonable degree of certainty. To that degree of proof, the People must be held and are held under the law and if they fail to sustain that burden, the Defendant is entitled to the benefit of a reasonable doubt and to acquittal.

[7] Reasonable doubt is not mere speculative or imaginary doubt such as anybody might conjure up about anything under the sun. In other words, you just do not pick a reasonable doubt out of thin air. It is not a capricious doubt, it is not a whim, or a guess or a surmise, not [sic] is it a subterfuge to which a juror may resort in order to avoid the performance of a disagreeable duty.

In other words, a reasonable doubt is an honest doubt, based, as I said before, on the evidence in the case or lack of satisfactory proof in a case.