**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ELROY TILLMAN,

       Petitioner-Appellant,

v.

GERALD L. COOK, Warden, Utah
State Prison,

       Respondent-Appellee.

No. 98-4160

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-731-B)

Michael R. Sikora and Loni F. DeLand of Salt Lake City, Utah for Petitioner-Appellant.

Marian Decker, Assistant Attorney General (Jan Graham, Utah Attorney General, with her on the brief), Salt Lake City, Utah for Respondent-Appellee.

Before **SEYMOUR** , Chief Judge, and **KELLY** and **HENRY** , Circuit Judges.

**HENRY** , Circuit Judge.

    ElRoy Tillman appeals the district court's denial of his petitions for a writ

of habeas corpus under 28 U.S.C. § 2254, seeking relief from his state court

conviction for first-degree murder in the State of Utah and the resulting death sentence. Claiming his right to Due Process was violated, Mr. Tillman presents six grounds on which habeas relief may be predicated: (1) the reasonable doubt instruction given at his trial lowered the government's burden of proof; (2) the prosecutor made statements that rendered the sentencing procedure fundamentally unfair; (3) the jury convicted him on the basis of elements for which there was insufficient evidence; (4) his indictment was insufficient; (5) his sentence of death was arbitrary, and thus unconstitutional, because the distinction between first-degree and second-degree murder was entirely unclear to a jury, and; (6) his sentence of death was arbitrary and unconstitutional, because three of five Justices of the Utah Supreme Court have, in different decisions and on different grounds, dissented in some way from the affirmance of his conviction and sentence.

## I. BACKGROUND

In accordance with Utah Code Ann. § 76-5-202 (1978), Mr. Tillman was convicted by a jury of first-degree murder, a capital crime, for the May 26, 1982 killing of Mark Schoenfeld. The same jury sentenced him to death. On appeal, the Utah Supreme Court affirmed his conviction and death sentence. See State v. Tillman, 750 P.2d 546 (Utah 1987) (" Tillman I ").

2

Mr. Tillman then filed for post-conviction relief in state court, which was denied. See Tillman v. Cook, 855 P.2d 211 (Utah 1993) ("Tillman II"). After the United States Supreme Court denied his petition for a writ of certiorari, Mr. Tillman filed a federal habeas claim in the United States District Court for the District of Utah on March 8, 1994. The district court dismissed his petition without prejudice to allow exhaustion of state remedies. The Utah Supreme Court rejected Mr. Tillman's second petition for post-conviction relief, see Tillman v. Cook, No. 950178 (Utah S. Ct. Order filed June 18, 1995) ("Tillman III") (unpublished), and Mr. Tillman again filed for federal habeas relief in the U.S. District Court on August 13, 1995.

The district court denied federal habeas relief. See Tillman v. Cook, 25 F. Supp.2d 1245 (D. Utah 1998) ("Tillman IV"). This appeal follows the district court's grant of a certificate of probable cause.

## II. DISCUSSION

### A. Standard of Review

Mr. Tillman's right to appeal is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, because his appeal was filed after its effective date, April 24, 1996. See Slack v. McDaniel, 120 S. Ct. 1595, 1603 (2000). AEDPA amended, inter alia,

3

28 U.S.C. § 2253, which now requires a certificate of appealability (COA) be issued before a prisoner may appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). The amendment to § 2253 codified the standard for a certificate of probable cause (CPC) established in Barefoot v. Estelle, 463 U.S. 880, 893-94 (1983) (holding that to obtain a CPC, a prisoner must make "a substantial showing of the denial of a federal right" (internal quotations and alteration omitted)), except for substituting "constitutional" for "federal." 28 U.S.C. § 2253(C)(2); see Slack, 120 S. Ct. at 1603-04. While the Court's clarification in Slack may have some effect on non-constitutional claims, the standard remains the same for constitutional claims. See id.

Because the showing for a CPC is the same as that required for a COA, we construe Mr. Tillman's certificate of probable cause as a certificate of appealability. See Neely v. Newton, 149 F.3d 1074, 1077 (10th Cir. 1998), cert. denied, 525 U.S. 1107 (1999). However, we must review Mr. Tillman's claims individually, because § 2253(c)(3) requires the COA to "indicate which specific issue or issues satisfy the showing" of the denial of a constitutional right under § 2253. See 28 U.S.C. § 2253(C)(2) & (3).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

4

wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in it procedural ruling.

Slack, 120 S. Ct. at 1604. We hold Mr. Tillman satisfies the showing regarding his first five issues. For the reasons stated below in Part II.G of this opinion, we deny a COA on Mr. Tillman's final issue regarding dissents by three of the five Utah Supreme Court justices.

Because he filed his federal habeas petition before its effective date, AEDPA determines Mr. Tillman's right to appeal, but that act does not govern our review of the district court's order. See Slack, 120 S. Ct. at 1602; Lindh v. Murphy, 521 U.S. 320, 326-27 (1997). "Lindh requires a court of appeals to apply pre-AEDPA law in reviewing the trial court's ruling, for cases commenced there pre-AEDPA . . . ." Slack, 120 S. Ct. at 1602.

Under pre-AEDPA law, we presume state court factual determinations to be correct. See Williamson v. Ward, 110 F.3d 1508, 1513 & n.7 (10th Cir. 1997). We review the district court's factual findings for clear error and its conclusions of law de novo. See Foster v. Ward, 182 F.3d 1177, 1183 (10th Cir. 1999), cert. denied, 120 S. Ct. 1438 (2000). However, "[w]hen the district court's findings are based merely on a review of the state record, we do not give them the benefit

5

of the clearly erroneous standard but instead conduct an independent review." Smallwood v. Gibson, 191 F.3d 1257, 1264 n.1 (10th Cir. 1999), petition for cert. filed, Mar. 9, 2000. "We may grant relief to a state prisoner only if state court error deprived him of fundamental rights guaranteed by the Constitution of the United States." Brown v. Shanks, 185 F.3d 1122, 1124 (10th Cir. 1999) (quotations omitted).

## B.   Reasonable Doubt Instruction

### 1.   Retroactivity of Cage v. Louisiana

Mr. Tillman challenges the constitutionality of the reasonable doubt instruction given to the jury at the guilt phase of the trial. He alleges the instruction "unconstitutionally and impermissibly lowered the State's burden of proof," Aplt. Br. at 6., as did the instructions given in two cases decided after his conviction became final — Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), and Monk v. Zelez, 901 F.2d 885 (10th Cir. 1990). Before reaching the merits of his argument, we must consider whether new rules regarding erroneous reasonable doubt instructions may be applied retroactively. Like the Second, Third, Fourth, Fifth, and Eleventh Circuits, we hold that the remedy for an unconstitutional reasonable doubt instruction must be applied retroactively.

The Supreme Court established in Teague v. Lane, 489 U.S. 288, 310

6

(1989), that "new constitutional rules of criminal procedure" are inapplicable to cases which became final prior to the announcement of the new rule. Teague denies habeas corpus petitioners the retroactive benefit of such new rules, subject to two exceptions. First, "a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal-lawmaking authority to proscribe.'" Id. at 311 (quoting Mackey v. United States, 401 U.S. 667, 692 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). Second, "a new rule should be applied retroactively if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." Id. (internal quotations omitted). To qualify under the second Teague exception, the new rule must (1) relate to the accuracy of the conviction and (2) "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Sawyer v. Smith, 497 U.S. 227, 242 (1990) (citations and internal quotations omitted).

A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final," Teague, 489 U.S. at 301 (emphasis omitted), or if it states a rule that is "susceptible to debate among reasonable minds," Butler v. McKellar, 494 U.S. 407, 415 (1990). While at the time of his conviction, "it was not a 'new' notion that the standard of proof beyond a reasonable doubt in criminal cases implicates concerns of constitutional

7

due process," Gaines v. Kelly , 202 F.3d 598, 602 (2d Cir. 2000), whether precedent dictated the result Mr. Tillman requests was certainly open to question. Compare Hopt v. Utah , 120 U.S. 430, 441 (1887) (suggesting that an instruction referring to the "weighty and important concerns of life, would be likely to aid [the jury] to a right conclusion") with Holland v. United States , 348 U.S. 121, 140 (1954) (noting the instruction "should have been in terms of the kind of doubt that would make a person hesitate to act, rather than the kind on which he would be willing to act"). The Supreme Court itself noted that the Cage decision was the first in which it "held that a [specific] definition of reasonable doubt violated the Due Process Clause." Victor v. Nebraska , 511 U.S. 1, 5 (1994); see Reed v. Ross , 468 U.S. 1, 17 (1984) (explaining that when a Supreme Court decision marks a "clear break with the past," the rule established therein "will almost certainly have been" previously unavailable in the requisite sense (internal quotations omitted)).

Like the district court, we hold that Mr. Tillman seeks a new rule that must be applied retroactively in accordance with the second exception to the Teague rule. Clearly, a reasonable doubt instruction is "central to an accurate determination of innocence or guilt." Teague , 489 U.S. at 313. "[W]here the instructional error consists of a misdescription of the burden of proof, [the error] vitiates all the jury's findings." Sullivan v. Louisiana , 508 U.S. 275, 281 (1993).

8

By "reshap[ing] our view of the importance of precise reasonable doubt instructions," Nutter v. White, 39 F.3d 1154, 1158 (11th Cir. 1994), Cage altered our understanding of a "bedrock procedural element[] essential to the fairness of a proceeding," Sawyer, 497 U.S. at 242 (quotation omitted). As the Supreme Court emphasized in Sullivan, 508 U.S. at 281, "[d]enial of the right to a jury verdict of guilt beyond a reasonable doubt is certainly [structural error], the jury guarantee being a 'basic protectio[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." Id. (quoting Rose v. Clark, 478 U.S. 570, 577 (1986)) (alteration in original). "[T]he jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt," and a constitutionally-deficient reasonable doubt instruction "does not produce such a verdict." Id. at 278. Such a structural error, unamenable to harmless error review, see id. at 281, violates a right "fundamental to the American scheme of justice," Duncan v. Louisiana, 391 U.S. 145, 149 (1968).

We note that several other circuits have also held the Cage rule satisfies the second Teague exception. See West v. Vaughn, 204 F.3d 53, 61 (3d Cir. 2000) ("A 'structural error' so severe that it resists harmless error analysis because it effectively nullifies the guilty verdict, as Sullivan described a Cage error to be, must necessarily implicate the fundamental fairness of the proceeding in a manner that calls the accuracy of its outcome into doubt." (citation omitted)); Gaines, 202

9

F.3d at 605 ("Because any criminal conviction rendered pursuant to an unconstitutional definition of reasonable doubt is necessarily unfair, we conclude that the rule advanced by [the defendant] falls within the second exception to the Teague doctrine." (citation omitted)); Humphrey v. Cain , 138 F.3d 552, 553 (5th Cir. 1998) (en banc) (concluding that a "Cage-Victor error fits within the second Teague exception" as set forth in the reasoning of the earlier panel opinion at 120 F.3d 526); Adams v. Aiken , 41 F.3d 175, 178-79 (4th Cir. 1994) (holding a constitutionally-deficient reasonable doubt instruction "is a breach of the right to a trial by jury, resulting in a lack of accuracy and the denial of a bedrock procedural element essential to fairness"); Nutter , 39 F.3d at 1158 (" Cage commands a new trial procedure to meet a fundamental concern that has long animated our criminal process. Thus, here we confront one of those rare instances where our interest in certainty is so clearly implicated that finality interests must be subordinated.").

### 2. *The Jury Instruction*

The Due Process Clause requires the government to prove every element of a charged offense beyond a reasonable doubt. See In re Winship , 397 U.S. 358, 364 (1970); see also Sullivan , 508 U.S. at 278 (noting standard "applies in state as well as federal proceedings"). However, "the Constitution neither prohibits

10

trial courts from defining reasonable doubt nor requires them to do so as a matter of course." Victor, 511 U.S. at 5. "A trial judge retains extensive discretion in tailoring jury instructions, provided that they correctly state the law and fairly and adequately cover the issues presented." United States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995).

> Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."

Victor, 511 U.S. at 5 (quoting Holland, 348 U.S. at 140) (citations omitted) (alterations in original).

The sufficiency of a reasonable doubt instruction is a legal question that we review de novo. See Conway, 73 F.3d at 980. "The constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard." Victor, 511 U.S. at 6 (emphasis added). If we determine that such a likelihood exists, we are compelled to grant the writ of habeas corpus, and we are prohibited from reviewing for harmless error. See Sullivan, 508 U.S. at 280-81.

The trial court delivered to the jury in Mr. Tillman's case the following jury instruction defining reasonable doubt (Instruction 14):

I have heretofore told you that the burden is upon the State to

11

prove the defendant guilty beyond a reasonable doubt. Now, by reasonable doubt is meant a doubt which is based on reason and one which is reasonable in view of all the evidence. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind and convinces the understanding of those who are bound to act conscientiously upon it. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of the evidence in this case.

If after an impartial consideration and comparison of all the evidence in the case you can candidly say that you are not satisfied of the defendant's guilt, you have a reasonable doubt. But if after such impartial consideration and comparison of all the evidence you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt. A reasonable doubt must be a real, substantial doubt and not one that is merely possible or imaginary.

State Ct. Rec., No. CR 82-1081, at 193.

Mr. Tillman argues that definition above lowered the state's burden of proof of his guilt. Specifically, he alleges two elements of the instruction render it constitutionally infirm: (1) the court equated reasonable doubt with "a real, substantial doubt"; and (2) the court instructed the jury, "if . . . you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the weighty and important matters relating to your own affairs, you have no reasonable doubt." Aplt. Br. at 10 (emphasis omitted) (quoting State Ct. Rec. at 193).

Mr. Tillman bases his argument on our decision in <u>Monk v. Zelez</u>, 901 F.2d 885, 890 (10th Cir. 1990), in which we ruled that a reasonable doubt instruction

12

combining "substantial doubt" language with "willing to act" language was constitutionally deficient and necessitated the grant of habeas relief. [1] In Monk, we stressed that the combination of the language required reversal, distinguishing the jury instruction from those in which a single error rested in an otherwise unobjectionable instruction. See id. at 893.

### a. Real, Substantial Doubt

In Taylor v. Kentucky, 436 U.S. 478 (1978), the Supreme Court expressed

---

[1] In Monk, the trial court gave the following reasonable doubt instruction:
> What is meant by the term "reasonable doubt"? "Reasonable doubt" means a substantial honest, conscientious doubt suggested by the material evidence or lack of it in the case. It is an honest, substantial misgiving generated by insufficiency of proof of guilt. It is not a captious doubt, nor a doubt suggested by the ingenuity of counsel or court and unwarranted by the testimony, nor a doubt born of a merciful inclination to permit the accused to escape conviction, nor a doubt prompted by sympathy for him or those connected with him. Proof beyond reasonable doubt means proof to a moral certainty although not necessarily an absolute or mathematical certainty. If you have an abiding conviction of [the defendant's] guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt. The rule as to reasonable doubt extends to every element of the offense although each particular fact advanced by the prosecution which does not constitute an element, need not be established beyond reasonable doubt. However, if, on the whole evidence, you are satisfied beyond reasonable doubt of the truth of each and every element, you should find the accused guilty. As members of the court you must bear in mind that only matters properly before the court as a whole may be considered.

Id. at 889 (emphasis added).

13

its concern over a reasonable doubt instruction which defined reasonable doubt as substantial doubt: "though perhaps not in itself reversible error, often has been criticized as confusing." Id. at 488. Twelve years later, the Court held that such a definition, combined with "grave uncertainty" and "moral certainty," violated the Due Process Clause. See Cage v. Louisiana, 498 U.S. 39, 40-41 (1990) (per curiam). In Cage, the jurors were instructed:

> [A reasonable doubt] is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty.

Id. at 40 (quotation omitted).

The Cage Court held that the emphasized portions of the instruction rendered it unconstitutional:

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. [2]

---

[2] Id. at 41. "In a subsequent case," the Court clarified that "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury

14

In Victor v. Nebraska, 511 U.S. 1 (1994), the Supreme Court again considered jury instructions defining reasonable doubt. The Victor Court reviewed different instructions from two consolidated cases and held each was constitutionally adequate. The instruction relevant to our inquiry read:

> "Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, to a moral certainty, of the guilt of the accused. At the same time absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the strong probabilities of the case, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an actual and substantial doubt reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

Id. at 18 (emphasis added).

The Victor Court agreed that the equation of a reasonable doubt with a substantial doubt was problematic, but it distinguished the instruction from that

---

did so apply it." Victor, 511 U.S. at 6 (citing Estelle v. McGuire, 502 U.S. 62, 72 & n.4 (1991)). The new standard did not, however, modify Cage's holding as to the unconstitutionality of the jury instruction in question. See Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (holding, two years after the adoption of the Estelle standard, that Cage instruction was unconstitutional and not subject to harmless error analysis).

15

given in Cage:

> On the one hand, "substantial" means "not seeming or imaginary"; on the other, it means "that specified to a large degree." Webster's Third New International Dictionary, at 2280. The former is unexceptionable, as it informs the jury only that a reasonable doubt is something more than a speculative one; but the latter could imply a doubt greater than required for acquittal under Winship. Any ambiguity, however, is removed by reading the phrase in the context of the sentence in which it appears: "A reasonable doubt is an actual and substantial doubt . . . as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture." Victor App. 11 (emphasis added).
>
> This explicit distinction between a substantial doubt and a fanciful conjecture was not present in the Cage instruction.

Victor, 511 U.S. at 19-20.

Like the instruction in Victor, but unlike the Cage and Monk instructions, Mr. Tillman's instruction distinguishes "a real, substantial doubt" from "one that is merely possible or imaginary." See Rec. at 193. In Cage, the Court was "concerned that the jury would interpret the term 'substantial doubt' in parallel with the preceding reference to 'grave uncertainty,' leading to an overstatement of the doubt necessary to acquit." Victor, 511 U.S. at 20. Not only is the reference to "grave uncertainty" absent from Mr. Tillman's instruction, but the juxtaposition with "merely possible or imaginary" "makes clear that 'substantial' is used in the sense of existence rather than magnitude of the doubt, so the same concern is not present." Id.; see also Ramirez v. Hatcher, 136 F.3d 1209, 1212-13 (9th Cir. 1998) (upholding instruction contrasting "substantial" with "mere

16

possibility or speculation"); Flamer v. Delaware, 68 F.3d 736, 757 (3d Cir. 1995) (en banc) (approving instruction contrasting "substantial doubt" with "mere possible," "vague, speculative," and "whimsical doubt"); Adams v. Aiken, 41 F.3d 175, 181 (4th Cir. 1994) (approving instruction contrasting substantial with "whimsical," "imaginary," "weak," and "slight"). Thus, although far from exemplary, the use of the substantial doubt language was not error.

### b. "Willing to Act" Language

Having found that the use of the substantial doubt language was cured, we turn to the "willing to act" language. We must determine whether the use of this language, consistently criticized by the Courts, results in a reasonable likelihood that the jury convicted Mr. Tillman on a standard of proof below that required by the Due Process Clause.

The trial court instructed the jury, "if . . . you can truthfully say that you have an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt." For decades, the Supreme Court has strongly disfavored such an instruction. See Holland v. United States, 348 U.S. 121, 140 (1954) (explaining, "this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, rather than the kind

17

on which he would be willing to act" (citation omitted)). In <u>Victor</u>, the Court

reaffirmed this position, stressing that the "hesitate to act standard gives a

common sense benchmark for just how substantial such a doubt must be." [3] Since

_____

[3] 511 U.S. at 20-21.
We note that the "pause and hesitate" language is not without its critics. <u>Id.</u> at 24 (noting that the instruction began by defining reasonable doubt as "such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon") (Ginsburg, J., concurring). In her concurrence in <u>Victor</u>, Justice Ginsburg identified a major concern with the widely-accepted "hesitate to act" language, quoting a judicial report to the Judicial Conference of the United States:

> "[T]he analogy it uses seems misplaced. In the decisions people make in the most important of their own affairs, resolution of conflicts about past events does not usually play a major role. Indeed, decisions we make in the most important affairs of our lives—choosing a spouse, a job, a place to live, and the like—generally involve a very heavy element of uncertainty and risk-taking. They are wholly unlike the decisions jurors ought to make in criminal cases." Federal Judicial Center, Pattern Criminal Jury Instructions 18-19 (1987) (commentary on instruction 21).

<u>Victor</u>, 511 U.S. at 24 (Ginsburg, J., concurring); <u>see also</u> <u>Scurry v. United States</u>, 347 F.2d 468, 470 (D.C. Cir. 1965) (en banc) ("[T]here is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of personal importance to him."). Justice Ginsburg urged for the adoption of the Federal Judicial Center's Pattern Criminal Jury Instruction 21, which states:

> [T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the

18

the Court announced its preference in Holland, courts have consistently criticized "willing to act" language and expressed a preference for "hesitate to act." See Monk, 901 F.2d at 890; Hatheway v. Secretary of the Army, 641 F.2d 1376, 1384 (9th Cir. 1981); United States v. Gordon, 634 F.2d 639, 644 (1st Cir. 1980); United States v. Babtiste, 608 F.2d 666, 668 (5th Cir. 1979); United States v. Magnano, 543 F.2d 431, 436-37 (2d Cir. 1976); United States v. Emalfarb, 484 F.2d 787, 790-91 (7th Cir. 1973); United States v. Cole, 453 F.2d 902, 906 (8th Cir. 1972); United States v. Restaino, 369 F.2d 544, 546 (3d Cir. 1966); Scurry v. United States, 347 F.2d 468, 470 (D.C. Cir. 1965).

Prior to Monk, we repeatedly criticized "willing to act" instructions. See, e.g., United States v. Pepe, 501 F.2d 1142, 1144 (10th Cir. 1974) ("The Supreme Court in Holland expressed its preference for the 'hesitate to act' formulation, and that preference should be heeded."); United States v. Smalldone, 485 F.2d 1333, 1347-48 (10th Cir. 1973) (holding curative language mitigated error). We now repeat our admonition from United States v. Leaphart, 513 F.2d 747, 750 (10th

---

law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Victor, 511 U.S. at 27 (Ginsburg, J., concurring) (quoting Federal Judicial Center, Pattern Criminal Jury Instructions, at 17-18); see also Conway, 73 F.3d at 980 (citing similar language with approval).

19

Cir. 1975): "The time has unquestionably arrived after Holland , Smalldone , and Pepe for the trial courts to change this instruction and to couch it in the terms prescribed by the Supreme Court of the United States."

Despite our criticism of the language, the cases have not held "willing to act language" to be reversible error in itself. See, e.g. , Smalldone , 485 F.2d at 1348; Monk , 901 F.2d at 890. Viewing the instructions on the whole, the cases have held the instructions to have properly conveyed the meaning of reasonable doubt to the jury. See, e.g. , Holland , 348 U.S. at 140 ("[T]he instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some."); United States v. Drake , 673 F.2d 15, 20 (1st Cir. 1982) (collecting cases).

Because the substantial doubt language in Mr. Tillman's reasonable doubt instruction was permissible, the willingness to act language stands alone. In an otherwise unobjectionable instruction, willingness to act language has not been held to constitute grounds for habeas corpus relief. [4] Accordingly, we hold that,

---

[4] We note with approval the Utah Supreme Court's subsequent rejection of this instruction:

In State v. Johnson , 774 P.2d 1141, 1147-49 (Utah 1989), a majority of this court essentially adopted the analysis of Justice Stewart's dissent in State v. Ireland , 773 P.2d 1375, 1380-82 (Utah 1989), for reviewing the appropriateness of a reasonable doubt instruction. This analysis requires a three-part test. First, "the instruction should specifically state that the State's proof must obviate all reasonable doubt." Ireland , 773 P.2d at 1381 (Stewart, J.,

20

taken as a whole, the instruction correctly conveyed the concept of reasonable doubt to the jury. We see no reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the <u>Winship</u> standard. <u>See</u> <u>Victor</u>, 511 U.S. at 6. Again, however, we note the possibility that this imprecise language could, as it did in <u>Monk</u>, create future problems, and, thus, should be eliminated.

## C.     Prosecutorial Statements During Closing Arguments

Mr. Tillman contends that certain statements made by the prosecutor during the closing arguments of the trial's penalty phase were so inflammatory as to deny a fair trial, and thus, violated his right to Due Process. He claims the prosecutor, urging imposition of the death penalty, invited the jury to consider the future risk he might pose. In response, Mr. Tillman's trial counsel suggested that a life sentence would be sufficient, because even in the unlikely event Mr. Tillman received parole, he would "be broken and old and incapable of causing damage to

---

dissenting). Second, the <u>instruction should not state that a reasonable doubt is one which "would govern or control a person in the more weighty affairs of life," as such an instruction tends to trivialize the decision of whether to convict</u>. <u>Id.</u> (Stewart, J., dissenting). Third, " <u>it is inappropriate to instruct that a reasonable doubt is not merely a possibility</u>," although it is permissible to instruct that a "fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt." <u>Id.</u> at 1382 (Stewart, J., dissenting).
<u>State v. Robertson</u>, 932 P.2d 1219, 1232 (1997) (emphasis added).

21

anyone," having "spent 15 or 20 years in confinement." Tillman I , 750 P.2d at

560. In rebuttal, the prosecutor argued that if Mr. Tillman were not executed, he

would be free to commit more acts of violence in fifteen years. See id.. Mr.

Tillman claims this final statement was not supported by the evidence and the

argument was not based on fact. [5]

---

[5] Mr. Tillman's trial counsel stated in closing arguments:
[Elroy Tillman] is 47 years old, ladies and gentlemen, he is not 30, and a life sentence, even in Utah which is relatively easy in the light [sic] sentence area, as I am informed to believe, is probably 15 or 20 years.

The Elroy Tillman you see today is not the Elroy Tillman that will be released from prison if he is released from prison and paroled again, which is highly unlikely in the event of his record at the end of 15 or 20 years. The man who is the threat about which [the prosecutor] has addressed to you so thoroughly is a 67-year-old man, not one of 47. His body won't be in the condition that it is now. He will have spent 15 or 20 years in confinement. He will be broken and old and incapable of causing damage to anyone.
Id. at 559-60.
Subsequently, the prosecutor stated:

I am sure we're all, to some degree or other, scholars of the Bible, the Mosaic law, the law of Christianity and all the rest of the factors [defense counsel] brought out in his closing remarks to you. And if I might for a moment indulge in that, in discussing a little of the Mosaic law yourself, you recall as the chosen, as they were called, were traveling through the wilderness, they were much like Elroy Tillman. They didn't heed the many miraculous instances of being saved, they were rotten and it took them 40 years to purge their souls. Forty years, not fifteen years as a life imprisonment would mean. . . .

. . . .

Can you honestly say to yourselves 15 years hence that a person showing the lack of remorse Mr. Tillman has shown is going to be a better person when he gets out or that he is not going to, as he said in the one statement to Lori Groneman, "Don't you know I will kill you, bitch?"

22

The state argues, and the district court held, the claim to be procedurally barred. The district court based its holding primarily on invited error and the fact that Mr. Tillman failed to contemporaneously object. *See* Tillman IV, 25 F. Supp. at 1269-76. The district court also held, and we agree, that the state waived any arguments that Mr. Tillman failed to exhaust state remedies regarding his claim. *See id.* at 1271.

### 1. *Procedural Bar*

The rule of procedural default in habeas cases "is grounded in concerns of comity and federalism; it is not jurisdictional." Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998). If state courts do not "indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." County Court of Ulster County v. Allen, 442 U.S. 140, 154 (1979). "Where the last state court to consider the federal constitutional claim decides it on the merits, state procedural bar is inapplicable." Crease v. McKune, 189 F.3d 1188, 1192 (10th Cir. 1999).

Although Mr. Tillman failed to object to the alleged error at trial, the Utah Supreme Court addressed the merits of the issue on direct appeal. In Tillman I, the court noted the 'death penalty exception' to the "general rule of appellate

*Id.* at 560.

23

review in criminal cases in Utah [requiring] that a contemporaneous objection or some form of specific preservation of claims of error . . . be made a part of the trial court record before an appellate court will review such claim on appeal." Tillman I , 750 P.2d at 551. The court added, "because of the serious and permanent nature of the penalty imposed in such cases, there needs to continue to be a death penalty exception to the contemporaneous objection rule." Id. at 552. Therefore, "[o]n direct appeal in capital cases, it is the established rule that this Court will review an error, even though no proper objection was made at trial and even though the error was not raised on appeal, if the error was manifest and prejudicial." Id. (quoting State v. Wood , 648 P.2d 71, 77 (Utah 1982)).

Addressing the merits, the Utah Supreme Court determined, "[a]fter careful review of the record, it is clear that prejudicial error did not occur in the sentencing procedure." Id. at 559. First, the court noted, "[w]hile [the prosecutor's] remarks were arguably improper and prejudicial because the prosecutor misstated the law and made a representation of fact not supported by the evidence, his comments, when placed within the context of his and defense counsel's entire arguments, fall within the ambit of permitted conduct." Id. at 560 (footnote omitted). Second, although the court examined the applicability of invited error and failure to object barring review, it nevertheless evaluated the possible prejudice resulting from the comments, consistent with the "death

penalty exception" to the contemporaneous objection rule, and found none. <u>See</u> <u>id.</u> at 561.

Upon review of the Utah Supreme Court's decision in <u>Tillman I</u>, we do not conclude, as the district court did, that the state supreme court applied procedural bar. Accordingly, we review the merits of Mr. Tillman's claim. <u>See</u> <u>Crease</u>, 189 F.3d at 1192; <u>Parks v. Brown</u>, 860 F.2d 1545 (10th Cir. 1988); <u>Brasier v. Douglas</u>, 815 F.2d 64 (10th Cir. 1987).


### 2. *Statements by the Prosecutor*

We note at the outset that not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation. <u>See</u> <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 338 (1985) (plurality). A prosecutor's improper comment or argument warrants habeas corpus relief only where the remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 645 (1974). We apply this standard to sentencing proceedings as well. <u>See</u> <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1025 (1999).

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution. . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . When a prosecutor responds

25

to an attack made by defense counsel, we evaluate that response in light of the defense argument. . . . Ultimately, we must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.

Id. (quoting Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994)) (internal quotations omitted); see also United States v. Young, 470 U.S. 1, 11-12 (1985) (criminal conviction not readily overturned on basis of prosecutor's comments alone; statements must be viewed in context of entire proceeding to determine whether conduct affected fairness of trial).

A prosecutor may permissibly comment only upon subjects that the jury may properly consider in determining a defendant's sentence. See Coleman v. Brown, 802 F.2d 1227, 1239 (10th Cir. 1986). We agree with the Utah Supreme Court that because the prosecutor's remark made a representation of fact not supported by the evidence (the average length of a life sentence in Utah) and misstated the law, it was improper. [6] However, we also agree that "when placed

_____

[6] See Tillman I, 750 P.2d at 560. In the dissenting opinion, Justice Durham criticized the prosecutor using even stronger terms:

The prosecutor emphasized the extreme threat of violence that defendant represented and then told the jury that defendant would be free to perpetrate that violence in fifteen years if they did not impose the death penalty. That information was not an accurate statement of either the law or the facts. It was misleading, and it is not difficult to see how it could have had a substantial impact on the jurors' decision to impose the death penalty rather than a life sentence. It is quite clear from the prosecutor's entire argument that it was designed to influence them—to convince them that the risks of letting defendant live were too great, that a life sentence would inevitably mean freedom.

26

within the context of his and defense counsel's entire arguments," the statements do not rise to the level of a Due Process violation. Id.; see also Darden v. Wainwright, 477 U.S. 168, 181 (1986) (noting it is "not enough that . . . remarks were undesirable or even universally condemned").

The prosecutor was legally permitted to ask the jury to consider Mr. Tillman's future dangerousness and to urge its members to impose the death penalty based on "specific deterrence." See Davis v. Maynard, 869 F.2d 1401, 1410 (10th Cir. 1989), vacated on other grounds sub nom. Saffle v. Davis, 494 U.S. 1050 (1990); Coleman, 802 F.2d at 1239. The defense counsel responded to that argument, speculating as to the probable length of a life sentence, and the prosecutor replied in kind. We do not believe the statement affected the jury's ability to judge the evidence fairly or rendered the sentencing proceeding

---

The Court should not countenance such prosecutorial overreaching in the penalty phase of a capital case. When the State seeks forfeiture of life as the penalty for a criminal act, it must do so without reliance upon any form of deception or exaggeration, deliberate or casual, intentional or inadvertent. "That the defendant acted in a reprehensible and even vicious manner cannot justify the state's departure from strict adherence to basic principles of justice. For our system of justice to command the respect of society, the law must be applied, in all cases, in a judicious and even-handed manner."
. . . .
The "forced choice" offered this jury was tainted by inadequate information and by prosecutorial misrepresentation about the nature of one of the choices.

Id. at 583-84 (Durham, J., dissenting) (quoting Wood, 648 P.2d at 80).

27

fundamentally unfair.    Cf. Brecheen v. Reynolds  , 41 F.3d 1343, 1356 (10th Cir. 1994) (holding "improper appeals to societal alarm" and requests for "vengeance for the community" do not amount to a denial of Due Process);    United States v. McMurray , 20 F.3d 831, 834 (8th Cir. 1994) (holding prosecutor's repeated use of words "lie" and "lying" in reference to defendant's testimony not reversible error where not inflammatory);   Talamante v. Romero  , 620 F.2d 784, 791 (10th Cir. 1980) (holding prosecutor's improper comment that if there were no evidence of guilt, jurors would not be present, because case would have been dismissed as a matter of law, did not require federal habeas relief).

## D.    Sufficiency of the Evidence to Justify Instructions on Killing During Arson or Aggravated Arson

The information in this case charged Mr. Tillman with first-degree murder in violation of Utah Code Ann. § 76-5-202 by "intentionally or knowingly caus[ing] the death of Mark Allen Schoenfeld, while [Mr. Tillman] was engaged in the commission of, or attempting to commit, Burglary or Aggravated Burglary; arson or aggrivated arson [sic]."    [7]  Not merely matters for consideration during

---

[7]   Rec. at 17.
When the offense was committed in May 1982, § 76-5-202(1) provided a killing constitutes first-degree murder if intentionally or knowingly done under circumstances in which:

(d) The homicide was committed while the actor was engaged in the commission of, or an attempt to commit, or flight after committing

28

sentencing and for capital punishment purposes, "aggravating factors" are elements of murder in the first degree (now aggravated murder) and must be proven beyond a reasonable doubt. See Utah Code Ann. § 76-5-202; State v. Thurman, 911 P.2d 371, 373 (Utah 1996) ("The statute's structure demonstrates that an intentional or knowing mental state is the threshold element of the offense of capital homicide and that this threshold element must be combined with proof of one or more of the statute's seventeen aggravating factors."); State v. Tuttle, 780 P.2d 1203, 1215-16 (Utah 1989).

The jury returned a general verdict of guilty, rather than a specific statement of which aggravating factor was found beyond a reasonable doubt. Mr. Tillman contends the rule of Stromberg v. California, 283 U.S. 359 (1931), [8] requires a grant of habeas corpus relief, because the state violated his

---

of attempting to commit, aggravated robbery, robbery, rape, forcible sodomy, or aggravated sexual assault, aggravated arson, arson, aggravated burglary, burglary, aggravated kidnaping or kidnaping.

[8] Stromberg requires that "a general verdict be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is [legally] insufficient, because the verdict may have rested exclusively on the insufficient ground." Zant v. Stephens, 462 U.S. 862, 881 (1983). The district court correctly distinguished between a legally insufficient ground, as in Stromberg, and a factually insufficient ground, as in this case. See also Griffin v. United States, 502 U.S. 46, 56-57 (1991) ("Jurors are generally not equipped to determine whether a particular theory of conviction submitted to them is contrary to law . . . . however, . . . jurors are well equipped to analyze the evidence."). We adopt the district court's reasoning regarding Mr. Tillman's Stromberg claim. See Tillman IV, 25 F. Supp.2d at 1283-87.

29

fundamental right to Due Process. Mr. Tillman alleges that because a general verdict was returned, the state must prove each and every aggravating factor, yet failed to prove felony arson. Mr. Tillman does not, however, contest the sufficiency of the evidence to support the burglary and aggravated burglary aggravators.

The state counters that the evidence was sufficient to support the aggravated arson aggravator, [9] or at least, attempted aggravated arson. It also suggests misdemeanor arson was sufficient under Utah Code Ann. § 76-5-202(1)(d).

On direct appeal, the Utah Supreme Court held that "the record contains ample evidence, both eyewitness testimony and physical evidence, to support a jury verdict that at the time of the commission of the homicide, defendant intentionally and knowingly caused the death of the victim under any one of the several objective aggravating circumstances at issue." Tillman I, 750 P.2d at 566 (Howe, J., concurring in the result). On habeas corpus review, the same court

---

[9] At the time of Mr. Tillman's offense, arson was defined in Utah Code Ann. § 76-6-102:
> A person is guilty of arson, if under circumstances not amounting to aggravated arson, by means of fire or explosive he unlawfully and intentionally damages . . . . (b) the property of another.

Aggravated arson was defined in Utah Code Ann. § 76-6-103:
> A person is guilty of aggravated arson if he intentionally and unlawfully damages (a) a habitable structure or (b) any structure or vehicle when any person not a participant is in the structure or vehicle.

held either felony or misdemeanor arson satisfies the statute. See Tillman II , 855 P.2d at 219 n.33.

As the district court noted, "[s]tate law determines the parameters of the offense and its elements and a federal court may not reinterpret state law." Tillman IV , 25 F. Supp.2d at 1283 (citing Mullaney v. Wilbur , 421 U.S. 684, 691 (1975); Estelle , 502 U.S. at 67-68; Richmond v. Embry , 122 F.3d 866, 870 (10th Cir. 1997)). We, thus, accept the state court's interpretation of Utah Code Ann. § 76-5-202(1)(d), holding misdemeanor arson satisfies the statute. Given the state supreme court's interpretation of the statute and our own review of the record, we agree that the evidence is sufficient to support the arson or aggravated arson elements. [10]

### E.    Sufficiency of the Indictment

Mr. Tillman argues the indictment was insufficient, thereby depriving him of his Sixth Amendment right to be put on notice of the nature of the charge. He claims the insufficiency of the indictment stems from its citation of only the common law names of the aggravating factors—burglary, aggravated burglary, arson, and aggravated arson—without referring to the statutory sections

---

[10]   The state Supreme Court's interpretation similarly precludes Mr. Tillman's attack on the same evidence at the penalty phase of the trial. See Aplt. Br. at 52-55 (Aplt's Issue F).

proscribing these acts. Mr. Tillman contends that because Utah has abolished common law crimes with Utah Code § 76-1-105, his indictment, at best, listed elements that were no longer crimes. We review a challenge to the sufficiency of an indictment de novo. See United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997).

Mr. Tillman's argument is unpersuasive. "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." Id.; see Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999) ("A charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him."), cert. denied, 120 S. Ct. 415 (2000); Rogers v. Gibson, 173 F.3d 1278, 1287 (10th Cir. 1999), cert. denied, 120 S. Ct. 944 (2000) (same). "It is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as 'those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). In Mr. Tillman's case, the indictment charged him by tracking the exact language of the murder statute he was charged with violating. We see no

32

ambiguity or uncertainty in the indictment that could have prejudiced Mr. Tillman in preparing his defense. We, therefore, reject his argument that his indictment was constitutionally inadequate.

**F.      Jury Instructions Defining First- and Second-Degree Murder**

Mr. Tillman next argues the jury instructions failed to "provide[] the jury with unambiguous and meaningful distinctions" between the definitions of first- and second-degree murder. Aplt Br. at 49. We hold the jury instructions properly communicated to the jury the elements of first-degree murder, as defined in Utah Code Ann. § 76-5-202(1)(d), and second-degree murder, as defined in Utah Code Ann. § 76-5-203.

Jury instruction 15 properly conveyed that a first-degree murder conviction required the jury to find that Mr. Tillman (1) caused Mr. Schoenfeld's death; (2) while acting intentionally or knowingly;      and (3) "at the time the homicide was committed, the defendant was engaged in the commission of, or attempting to commit burglary or aggravated burglary, and/or arson or aggravated arson."      Rec. at 194. The instruction listed the elements of first-degree murder conjunctively, advising the jury that capital murder required a finding of all the elements.

Instruction 16, on the other hand, provided four alternative findings that would result in a second-degree murder conviction: finding that Mr. Tillman: (1)

33

"[a]cted intentionally or knowingly in causing the death of Mark Shoenfeld; or"
(2) "[i]ntending to cause serious bodily harm to Mark Schoenfeld, committed an act clearly dangerous to human life that caused the death"; or (3) acted with "depraved indifference to human life," causing the death by engaging in conduct that created a "grave risk of death"; or (4) caused the death while in the commission or attempted commission of burglary, aggravated burglary, arson, or aggravated arson. Id. at 195 (emphasis added).

Taken together, the two instructions properly distinguished between the two degrees of murder at issue. Capital murder required specific intent to kill and an aggravating factor, while non-capital murder required a finding of only intentional homicide, or only a listed aggravator.

## G. Dissents by Three of Five State Supreme Court Justices

Finally, Mr. Tillman claims that his execution is barred by the Eighth Amendment, because "[t]hree of the five members of the Utah Supreme Court have voted to either reverse Tillman's conviction for capital murder (Justices Durham and Zimmerman in Tillman I, 755 P.2d at 590-91), or to vacate Tillman's sentence of death (Justice Stewart in Tillman II, 855 P.2d at 231)." Aplt. Br. at 55-56. The district court determined Mr. Tillman's argument to state a new rule, barred by Teague. Although we certainly agree with the district court regarding the novelty of Mr. Tillman's argument, we reject it as meritless, but do not

34

believe it to be  Teague -barred.

Mr. Tillman's focuses on the identity of individual justices dissenting in different proceedings as to different issues.  In each proceeding before the Utah Supreme Court, however, a majority of the court affirmed his conviction and sentence, then denied the petition for post-conviction relief.  At no time have three justices concurred on any issue for reversal.  Mr. Tillman may not cobble together a majority from multiple proceedings and multiple issues.  Indeed, Mr. Tillman's "argument is one of merely counting judicial noses regardless of the content of the issue on which the individual justice dissents."     Tillman IV , 25 F. Supp.2d at 1312.

As the district court noted, Mr. Tillman "has cited no precedent for his position on this point.  None has been found."     Id. at 1312. Because Mr. Tillman has failed to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter or that the issue[] presented w[as] 'adequate to deserve encouragement to proceed further,'" we deny the certificate of appealability and dismiss his appeal as to this issue.   Slack , 120 S. Ct. at 1603-04 (quoting    Barefoot , 463 U.S. at 893 & n.4).

**III.  CONCLUSION**

We grant a certificate of appealability as to all of Mr. Tillman's issues on

appeal, except the final issue. For the reasons stated above, we find no reversible error as to Mr. Tillman's conviction or sentence. Accordingly, we AFFIRM the district court's judgment denying the writ of habeas corpus.